UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

CHERYL BROWN,                          )
                                       )
         Plaintiff                     )
                                       )
v.                                     )          1:10-cv-00166-JAW
                                       )
SOCIAL SECURITY ADMINISTRATION         )
COMMISSIONER,                          )
                                       )
         Defendant                     )

**REPORT AND RECOMMENDED DECISION**

The Social Security Administration found that Cheryl Brown, 61 years of age as of her

administrative hearing, did not have any impairment or combination of impairments that would

more than minimally limit her ability to perform basic work-related activities, resulting in a

denial of Brown's application for disability insurance benefits under Title II of the Social

Security Act.  Brown commenced this civil action to obtain judicial review of the final

administrative decision, alleging errors at step 2 of the sequential evaluation process.  I

recommend that the Court vacate and remand for reasons that follow.

**Standard of Review**

The standard of review is whether substantial evidence supports the Commissioner's

findings.  42 U.S.C. §§ 405(g), 1383(c)(3);  Manso-Pizarro v. Sec'y of Health & Human Servs.,

76 F.3d 15, 16 (1st Cir. 1996).  Substantial evidence is evidence that a reasonable mind might

accept as adequate to support a finding.  Richardson v. Perales, 402 U.S. 389, 401 (1971);

Rodriguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981).  "The ALJ's

findings of fact are conclusive when supported by substantial evidence, but they are not

conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted

to experts."  Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999).

**The Administrative Findings**

The Commissioner's final decision is the March 25, 2010, decision of the Decision Review Board, which "found no reason" to disturb the decision of Administrative Law Judge Guy Fletcher.  The Commissioner rests, in effect, on the December 23, 2009, decision issued by Judge Fletcher.  Judge Fletcher's decision tracks the familiar five-step sequential evaluation process for analyzing social security disability claims.  (Docs. Related to Admin. Process, Doc. No. 8-2, R. 1-3, 6-15.[1])

At Step 1 of the sequential evaluation process, the Judge found that Brown meets the insured status requirements of Title II through June 30, 2006, and did not engage in substantial gainful activity between her alleged disability onset date, June 1, 2006, and the date last insured. (R. 11, ¶¶ 1, 2.)

At Step 2, the Judge found that Brown's alleged impairments of diabetes mellitus, degenerative disk disease at L5/S1, and abdominal pain and bloating were "medically determinable impairments" as of the date last insured, but that she did not have an impairment or combination of impairments that were occupationally "severe" for 12 consecutive months through her date last insured (DLI).  (R. 11-12, ¶¶ 3, 4.)  Because the Judge concluded that Brown was not under a disability at any time from the June 1, 2006, onset date through the June 30, 2006, DLI, he denied Brown's claim at this step.

**The Medical Record**

Brown's DLI is June 30, 2006, but she did not file her application for Title II benefits until April of 2008.  Her medical records do not include a contemporaneous treatment provider

---

[1]     The Commissioner has consecutively paginated the entire administrative record ("R."), which has been filed on the Court's electronic docket in a series of attachments to docket entry 8.

statement concerning functional impairment until roughly three years after her DLI. Her records do divulge that an assortment of health conditions and impairments were indicated prior to 2006, including a total hysterectomy in 1998, additional gynecologic surgery (colporrhaphy and perineorrhaphy) with bladder association (cystocele) in 2000 (Ex. 15F), and an intestinal procedure (laparoscopy with enterolysis and liver biopsy) in 2002 (Ex. 23F/24F). These procedures may[2] explain Brown's primary basis for alleging disability: chronic and acute abdominal pain and bloating. In addition to the abdominal impairment, the record divulges the existence of degenerative changes in the spine (Ex. 9F, R. 231), diabetes, obesity, irritable bowel syndrome (a disputed diagnosis), bladder incontinence (incomplete voiding), back and knee pain, and alleged impairment secondary to an old fracture in the left upper extremity. Records dated prior to the DLI or close to it also indicate the presence of depression. (Ex. 5F, R. 199; Ex. 9F, R. 247; Ex. 28F, R. 382.) Trazadone and Zoloft are among Brown's medications and Zoloft 50 mg, was prescribed for "depressed affect" in 2004. (Ex. 6F, R. 202; Ex. 9F, R. 247.) In her disability report, Brown described these pills as her sleeping pills, but she was mistaken as to the origin of the Zoloft prescription. (Ex. 3E, R. 115.) Brown also omitted depression from her list of conditions that allegedly limit her ability to work (Id., R. 109), though the Judge nevertheless considered Brown's belated assertion of a mental impairment in his decision.

In October of 2008, Disability Determination Services consulting physician Donald Trumbull, MD, reviewed Brown's medical records and produced a physical RFC assessment, identifying irritable bowel syndrome and back pain as the primary diagnoses. (Ex. 11F, R. 261.) Dr. Trumbull found "insufficient evidence to establish a period of disability before DLI of 6/06" and stated that the medical evidence of record did not demonstrate a severe level of impairment.

---

[2]     Treatment providers have suggested a dietary cause, despite this surgical history. Recommended treatment circa June 2007 was in the form of a "diet order." (Ex. 7F, R. 211; see also Ex. 29F.)

(Id., R. 268.)  Possibly based on Dr. Trumbull's failure to suggest a referral for psychiatric review, the Administration never referred Brown's claim to a qualified psychiatrist or psychologist.

In October of 2009, one month prior to her administrative hearing, Brown obtained from Dr. Ila Shulman, MD, a medical source statement of physical ability for work-related activities. Dr. Shulman placed Brown in the lightest exertion category (sedentary) and identified a number of additional limitations, some based on alleged impairment of the left upper extremity due to a past fracture.  (Ex. 31F.)  Dr. Shulman's source statement is accompanied by treatment records commencing January of 2009.  (Ex. 33F.)  Her impression as of October 15, 2009:  "I think obesity is a large contributing factor to any [abdominal] discomfort she is having.  I recommended diet, exercise, and weight loss.  Thus far I saw nothing from a clearcut medical standpoint to support a determination of disability."  (Id., R. 464.)  Dr. Shulman did not describe urinary incontinence, diabetes, or IBS as occupationally significant impairments.  Similarly, in regard to Brown's October 6, 2009, presentation at her office to review disability paperwork, Dr. Shulman explained:  "[I]t is difficult to give an appropriately informed input into the etiology, possible treatment and any degree of disability related to the abdominal pain from a medical standpoint." (Id., R. 472.)  Brown argues that Dr. Shulman's source statement overrides Dr. Trumbull's RFC assessment, though a review of the quoted passages certainly calls this perspective into question.

Brown also obtained a medical source statement of mental ability for work-related activities from Dr. William DiTullio, Ed.D.  In his October 2009 form, Dr. DiTullio assessed an inability on Brown's part to complete a normal workday and work week at normal pace without an unreasonable number and length of rest periods.  He also assessed an inability to interact

4

appropriately with the general public.  (Ex. 34F.)  He attributed the first limitation to abdominal pain and bloating rather than any psychological condition.  He described his diagnostic impression as "dysthemic disorder, anxiety disorder with social phobia and occasional panic attacks," and explained that Brown is "anxious regarding the general public, but only in big crowds."  (Id., R. 482.)  There is no evidence of a treatment relationship with Dr. DiTullio.  The final exhibit in the record is a letter from Dr. DiTullio to plaintiff's counsel.  Dr. DiTullio indicated therein that Brown does not meet the criteria for Major Depression and ruled out Somatoform Disorder as a potential explanation for Brown's pain symptoms.  (Ex. 35F, R. 484-85.)  Neither Dr. Shulman nor Dr. DiTullio expressed an opinion concerning the degree of impairment in 2006, though Brown's perspective is that their recent evaluations still carry weight because her impairments have a longstanding history.

## Discussion of Plaintiff's Statement of Errors

Brown alleges that the record does not supply substantial evidence in support of the Judge's unfavorable finding at step 2.  For reasons that follow, this would not be a case for remand if the presentation were limited to physical impairments, but Brown's objections related to the treatment given to her mental impairments raise a remand-worthy issue and, depending on further developments, there may be a need for the Commissioner to re-evaluate Brown's Title II claim in light of the combined impact of all impairments, both mental and physical.

At step 2, the Commissioner must determine whether the claimant has demonstrated the existence of one or more medically determinable, "severe" impairments, or a severe combination of impairments.  20 C.F.R. § 404.1520(a)(4)(ii).  The claimant's burden at step 2 is a *de minimis* burden, designed to do no more than screen out groundless claims.  McDonald v. Sec'y of Health & Human Servs., 795 F.2d 1118, 1123 (1st Cir. 1986).  When a claimant produces evidence of

an impairment, the commissioner may make a determination at step 2 that the impairment is not severe only when the medical evidence "establishes only a slight abnormality or combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work even if the individual's age, education, or work experience were specifically considered." Id. at 1124 (quoting Social Security Ruling 85-28). At step 2, only medical evidence may be used to support a finding that an impairment is severe. 20 C.F.R. § 404.1528(a); Social Security Ruling 85-28.

### 1. Mental impairment

Brown alleges error in the Judge's failure to find that reports of depression and antidepressants in her pre-DLI medical records demonstrate a severe mental impairment for purposes of step 2. In support of this position, Brown points to Dr. DiTullio's 2009 opinion that she presently suffers from a dysthymic disorder that precludes substantial gainful activity by markedly impeding social contact with the general public and completion of a full workday. Brown argues that the Judge could not conclude that her mental impairment was not severe on this record without first referring the file for expert evaluation by a psychologist or psychiatrist and obtaining an assessment to that effect, citing 42 U.S.C. § 421(h). (Statement of Errors at 9-12.) In the absence of that kind of record development, Brown says the Judge was required to recognize an affective/anxiety disorder at step 2 because there is no other medical source evidence concerning mental health in the record and Dr. DiTullio's opinion is therefore uncontroverted.

I am not persuaded that Dr. DiTullio's 2009 opinion that Brown suffers from a dysthemic disorder carries sufficient weight to direct an outcome of the step 2 question because the 2009 opinion does not address Brown's condition as of her DLI. However, in addition to other factors,

Dr. DiTullio's opinion does support a remand for further record development. Congress requires that "in any case where there is evidence which indicates the existence of a mental impairment, [a finding of not disabled] shall be made only if the Commissioner of Social Security has made every reasonable effort to ensure that a qualified psychiatrist or psychologist has completed the medical portion of the case review and any applicable residual functional capacity assessment." 42 U.S.C. § 421(h). Arguably, there is some room for debate whether the pre-DLI medical records in this case amount to "evidence which indicates the existence of a mental impairment." That is to say, there is precedent to the effect that not every reference to depression requires a referral to a mental health expert, even where an antidepressant has been prescribed. See, e.g., Sneed v. Barnhart, No. 06-12693, 214 Fed. Appx. 883, 886 (11th Cir. Dec. 22, 2006) (not for publ'n) (questioning the extent to which § 421(h) applies to ALJ assessments, finding that "sporadic" references to depression and existence of Zoloft and Xanax prescriptions did not demonstrate a severe mental disorder, and affirming denial of benefits); Kenoyer v. Barnhart, No. 01-35469, 49 Fed. Appx. 173, 174 (9th Cir. Oct. 23, 2002) (not for publ'n) (remanding for further proceedings where record demonstrated a three-year treatment for depression, suicidal ideation, GAF score of 50, and "depression affecting pain," more significant reports than what is present here); Marcum v. Comm'r, SSA, No. 98-6771, 2000 U.S. App. Lexis 787, *11-13, 2000 WL 92262, *3-4 (6th Cir. Jan. 18, 2000) (not for publ'n) (affirming where the record divulged "a single report . . . of some depression and reports of nonrestorative sleep" for which Amitriptyline was prescribed as a sleep aid). My research did not uncover First Circuit or District of Maine precedent related to § 421(h) and the mine run of step 2 cases that have been affirmed over objection involve psychiatric review techniques performed by consulting experts.

I am concerned that the failure to refer this file for review by a mental health expert at the

initial review level was anomalous and is not likely to recur with any regularity. Although there may be a basis in this case for the Court to construe § 421(h) in a way that would not require referral to a psychiatrist or psychologist, I am reluctant to recommend that kind of disposition in this particular case given the combined effect of all of the following factors: (1) there are a handful of references to depression in the pre-DLI medical records; (2) there is a record of antidepressant medication which may well have persisted over time; (3) the Judge made an inaccurate statement that a link between the Zoloft prescription and depression does not exist in the record (see R. 13, contradicted by Ex. 9F, R. 247); (4) the only expert evaluation to date (by Dr. DiTullio) finds a severe impairment; (5) if there is a severe mental impairment there is also room for the physical impairments to influence any resulting residual functional capacity assessment; and (6) Ms. Brown is of advanced age under the Commissioner's regulations and those regulations make age a potentially significant factor at both step 2 and step 5.

I recognize and appreciate the Commissioner's point that Brown's application paperwork did not advance depression as a work-related impairment and also the fact that Dr. Trumbull (an M.D.) did not regard the references to depression as calling for referral to another expert. Nevertheless, the Judge allowed Brown's later allegations of mental impairment and did not consider the issue waived (appropriately). Moreover, the Commissioner did not actually mount an argument addressed to § 421(h) despite Brown's citation of the statute in her statement of errors.

### 2. *Physical impairments*

For the parties' benefit, I briefly explain why the record would not call for remand if the issues where limited to Brown's physical impairments. First, the Judge's finding that Brown's physical impairments are not severe is supported by Dr. Trumbull's physical RFC assessment

and Brown's attempts to discredit that assessment all fail. Second, Dr. Shulman's post-DLI treatment records and source statement do not have the persuasive force that Brown ascribes to them.

Brown complains that Dr. Trumbull's assessment is not reliable because Dr. Trumbull failed to take into consideration more recent records of Brown's treatment with Dr. Shulman. Brown also argues that the Judge should have given Dr. Shulman's opinion controlling, or at least significant, weight. (Statement of Errors at 2-4, 8.) There are two problems with these arguments: (1) Dr. Shulman's treatment notes are cumulative of what is already in the record and do not diagnose or describe anything new; and (2) Dr. Shulman's opinion of work-related functioning essentially concedes that she has simply repeated the limitations reported to her by Brown and that her examination of Brown and her records has not enabled Dr. Shulman to offer "informed input into . . . any degree of disability related to the abdominal pain from a medical standpoint" (R. 472). A reasonable person could well agree with the Judge that such an opinion does not override Dr. Trumbull's assessment, despite the treatment relationship.

Brown also argues that remand is required because the Judge failed to discuss her obesity in compliance with Social Security Ruling 02-1p. (Statement of Errors at 12-13.) In fact, the Judge did discuss obesity as a causative factor for Brown's abdominal symptoms, citing Dr. Shulman's recent medical report and opinion and the pre-DLI medical report of Dr. Burns. (R. 13-14.) The Judge considered that obesity contributed to Brown's subjective symptoms of abdominal pain and discomfort, but nevertheless found these symptoms to be insufficiently supported in terms of demonstrating a severe impairment. Dr. Trumbull's physical RFC assessment supports this conclusion and Dr. Shulman's recent evaluation does not override it, given the qualifications she stated in relation to her evaluation.

Finally, Brown argues that Dr. Trumbull's assessment cannot support the Judge's finding in this case because Dr. Trumbull's assessment looks almost exactly like the assessment performed by a non-expert at an earlier stage in the claims review process. (Statement of Errors at 7.) I see no basis for the Court to infer, let alone assume, that Dr. Trumbull simply "rubber stamped" the opinion of someone without medical training, even if he drew on that person's comments following his file review.[3]

## Conclusion

For the reasons set forth above, I RECOMMEND that the Court VACATE the Commissioner's final decision and REMAND for additional proceedings consistent with the foregoing discussion.

### NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, within fourteen (14) days of being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

/s/ Margaret J. Kravchuk
U.S. Magistrate Judge

April 5, 2011

---

[3]     Brown fails to indicate whether she presented this argument to the administrative law judge.